**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALFRED TRIPPETT, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CATBIRD NYC LLC,<br><br>Defendant. | Case no. 1:25-cv-10223<br><br>CLASS ACTION COMPLAINT<br>AND<br><u>DEMAND FOR JURY TRIAL</u> |

## <u>INTRODUCTION</u>

1. Plaintiff, Alfred Trippett (hereinafter "<u>Plaintiff</u>"), brings This action on behalf of himself and all other persons similarly situated against Catbird NYC LLC (hereinafter "<u>Defendant</u>"), and states as follows:

2. Plaintiff is legally blind and relies on screen-reading software to access digital content on his computer. He uses these terms to describe individuals whose corrected visual acuity is at or below 20/200, a group that includes people with minimal residual vision as well as those with none.

3. According to a 2010 report from the United States Census Bureau, roughly 8.1 million individuals in this country live with visual impairments, including approximately 2 million who are blind. The American Foundation for the Blind has estimated that several hundred thousand visually impaired individuals reside in New York State alone.

4. This lawsuit arises from Defendant's failure to design, maintain, and operate its website in a manner that allows blind users to access it independently. Defendant denies equal access to blind and

visually impaired consumers nationwide by operating https://www.catbirdnyc.com/ in a way that prevents screen-reader users from meaningfully browsing or purchasing jewelry. In doing so, Defendant withholds from blind customers the full and equal enjoyment of the goods and services it makes available to sighted shoppers, in violation of Title III of the Americans with Disabilities Act.

5. Defendant's website showcases a broad selection of jewelry, product details, promotions, and purchasing options. Despite this, the website contains significant accessibility failures that make it extremely difficult or impossible for blind users to navigate or complete a transaction. These barriers collectively block blind customers from participating in the modern online marketplace on equal terms. As reliance on digital platforms continues to expand, accessible web design has become essential to allow blind individuals to engage in independent shopping and everyday tasks.

6. For blind consumers, online shopping often provides greater independence than brick-and-mortar environments, which may involve travel challenges. When a website is not accessible, blind users are excluded from the shopping experience entirely and must rely on sighted assistance just to attempt what sighted customers accomplish independently.

7. Defendant has opted to run its website as a primarily visual interface, despite readily available accessible design tools used by many major online retailers. These include accurate alternative text for product images, properly labeled and navigable headers, accessible form fields and links, logical keyboard navigation, and avoidance of elements that trap or obscure focus. Because these basic accessibility features are missing or malfunctioning, blind consumers cannot navigate, understand, or shop on the website without outside help.

8. By maintaining a website that excludes blind users, Defendant violates federal and state law. Congress enacted the ADA to eliminate discriminatory barriers that prevent individuals with disabilities from participating in daily life on equal footing, including digital barriers that inhibit access to goods and services offered by public accommodations. New York law imposes similar obligations.

9. Plaintiff visited the website intending to purchase a gold chain necklace and birthstone rings as gifts for family members. But the website's numerous accessibility failures prevented him from enjoying the same shopping experience as sighted individuals. Unless Defendant corrects these systemic barriers, Plaintiff and similarly situated consumers will continue to be unable to independently browse, navigate, or complete purchases on the website.

10. Because Defendant's website is not accessible to blind consumers, it violates the ADA. Plaintiff seeks injunctive relief requiring Defendant to modify its policies and practices to ensure lasting compliance with accessibility standards. Plaintiff also seeks compensatory damages for the unlawful discrimination he and the putative class members have suffered.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12181 because Plaintiff brings claims pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. The Court also has jurisdiction under 28 U.S.C. § 1332. Supplemental jurisdiction is proper under 28 U.S.C. § 1367 for Plaintiff's related claims under the New York State Human Rights Law, N.Y. Exec. Law Article 15, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.

13. Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), and 144(a) because Defendant conducts substantial business within this District and a significant portion of the events giving rise to Plaintiff's claims occurred here. Plaintiff accessed the website from within this Judicial District on multiple occasions, attempted to shop for jewelry, and personally encountered the discriminatory barriers described in this complaint.

14. Defendant is registered to do business in New York and actively markets to and serves customers within this District through its website. Defendant has purposefully directed commercial activity here, regularly transacts with New York residents, and commits the discriminatory acts at issue within the District. Defendant's conduct has caused injury to consumers in this District and continues to do so. Courts regularly recognize venue as proper where the attempted use of an inaccessible website occurred, given that the harm materializes where the user is located.

15. Defendant has established and cultivated a customer base within this District, and the alleged violations arise directly from its decision to operate its website in a manner that denies blind consumers full and equal access in this forum.

## PARTIES

16. Plaintiff is, and at all relevant times has been, a resident of New York County, State of New York.

17. Plaintiff is legally blind and belongs to a protected class under the ADA, 42 U.S.C. § 12102, the implementing regulations at 28 C.F.R. § 36.101 et seq., the New York State Human Rights Law, and the New York City Human Rights Law. Plaintiff cannot access digital content without the use of screen-reading software and was denied the full enjoyment of the goods and services offered through Defendant's website because of the accessibility barriers present on it. Plaintiff uses NVDA

to navigate websites and relies entirely on accurate labeling, proper keyboard functionality, and readable structure to use an online store independently.

18. Defendant Catbird NYC LLC is a New York entity that conducts business within the State and this District. Its principal place of business is located at 253 Centre Street, New York, NY 10013. Defendant operates an online retail store through https://www.catbirdnyc.com/, where customers can browse and purchase jewelry, including rings, necklaces, bracelets, charms, and related accessories. Defendant's website is a place of public accommodation under Title III of the ADA, 42 U.S.C. § 12181(7). See Victor Andrews v. Blick Art Materials, LLC, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. Aug. 1, 2017). The inaccessibility of the website deterred Plaintiff from completing an online purchase of a gold chain necklace and birthstone rings.

## NATURE OF THE CASE

19. The Internet has become a central tool for gathering information, completing transactions, and performing daily tasks for both sighted and blind users. For individuals who are blind, access to websites depends on the ability to navigate with a keyboard and screen-reading software that converts on-screen content into speech. When a website is not built so that its information can be read and interpreted by such software, blind users are shut out from the content, products, and services available to sighted customers.

20. For screen-reading technology to work, the website's structure and content must be capable of being rendered into text. If images, menus, links, or interactive features are not programmed to convey their information textually, blind users cannot perceive them. Without accessible coding, blind visitors are unable to navigate or engage with a website independently.

21. Screen-reader users have access to programs such as NVDA, which rely on properly labeled elements, functional keyboard navigation, and a logical reading order. If any of these elements are missing or faulty, the user cannot move through the site or understand what is displayed on the page.

22. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.2), which outline well-established methods for ensuring websites are accessible to blind and visually impaired individuals. Federal agencies and major private-sector businesses routinely follow these standards, which call for features such as descriptive alt text, accessible form fields, meaningful link descriptions, visible focus indicators, and keyboard operability. Compliance with these guidelines allows websites to function for the "least sophisticated" user of assistive software and ensures ongoing accessibility as sites evolve.

23. Defendant's website does not meet these basic requirements. As a result, blind users cannot independently browse, select, or purchase items from Catbird's online jewelry store. These failures prevent Plaintiff from enjoying the same access to Defendant's goods and services that sighted consumers receive without difficulty.

## FACTUAL ALLEGATIONS

24. Defendant operates and controls its website, https://www.catbirdnyc.com/, within New York State and throughout the United States.

25. The website is an online retail store that offers jewelry for sale, including rings, necklaces, and other accessories. Customers rely on the site to browse merchandise, read product descriptions, and complete purchases.

26. This case arises from Defendant's ongoing practice of denying blind consumers equal access to its goods and services by maintaining a website that is not accessible to screen-reader users. Because Defendant has not removed the access barriers that prevent blind individuals from navigating the site, those individuals continue to be excluded from the full range of goods, services, and benefits Defendant offers to the public.

27. Defendant's website blocks blind users from meaningful access by preventing free and independent navigation. These barriers interfere with keyboard use, fail to provide essential textual information, and obstruct the basic steps required to shop online.

28. The website contains widespread accessibility barriers that impede Plaintiff and other blind individuals using screen-reading software. These issues are extensive and affect numerous portions of the site.

29. When visiting the website and using his screen reader, Plaintiff encountered multiple accessibility failures, including:

30. Homepage headers that would not open or announce properly, preventing Plaintiff from accessing major product categories.

31. The absence of a skip-to-content mechanism, forcing Plaintiff to repeatedly navigate through redundant material on every page.

32. Missing or non-descriptive alt text for product images, particularly when attempting to view items before adding them to the cart, which prevented Plaintiff from identifying the jewelry he intended to purchase.

33. Top-of-page promotional banners that were unreadable with NVDA, leaving Plaintiff unaware of active offers and announcements.

34. Pop-ups that appeared without proper focus management, disrupting navigation and making it difficult to regain orientation on the page.

35. Navigation inconsistencies and focus traps that caused portions of the screen to dim or freeze while Plaintiff attempted to browse or use search features, leaving him unable to determine his position on the site.

36. Defendant's own website contains additional documented accessibility failures, including hundreds of elements that are not keyboard operable, dozens of images lacking alt attributes, form fields without labels, inaccessible component names, missing focus indicators, and mismatches between visual and programmatic reading order. These barriers were confirmed by automated testing tools, including SortSite and other industry-standard accessibility scans, and affect the ability of blind users to browse, understand, and select products on the site.

37. Because of these barriers, blind consumers are effectively prevented from purchasing items through Defendant's website.

38. These conditions deny Plaintiff the equal access he would otherwise have to use the site and fully enjoy its goods and services.

39. Plaintiff attempted to visit and use the website with the intent of purchasing a gold chain necklace and birthstone rings as gifts for family members.

40. Plaintiff visited the website on December 1st, 2nd, 4th, and 6th of 2025. Each time, he encountered multiple accessibility barriers that prevented him from browsing products, comparing items, understanding product information, or completing a transaction.

41. The website's failures included inaccurate or missing alt text, malfunctioning navigation, unreadable banners, inaccessible headers, and recurring interruptions caused by improperly coded pop-ups. These issues made the website inaccessible and prevented Plaintiff from independently evaluating or purchasing jewelry.

42. Plaintiff intends to revisit the website once the accessibility barriers have been corrected, as he still wishes to purchase jewelry from Defendant.

43. Unless the Court intervenes, the barriers will continue to prevent Plaintiff from accessing Defendant's goods and services and will continue to subject him to unequal treatment.

44. Plaintiff has firsthand knowledge that Defendant's website contains extensive barriers that block independent use by blind consumers. These barriers have denied him equal access to the goods, benefits, and services offered on the website.

45. Defendant has engaged in acts of intentional discrimination by maintaining a website that remains inaccessible despite established accessibility standards and readily available solutions. Defendant has:

46. Maintained a website that is inaccessible to blind users despite knowing the discriminatory impact.

47. Maintained a design that is not intuitive or operable for screen-reader users.

48. Failed to remedy the barriers despite the substantial harm caused to blind consumers.

49. Defendant employs standards, criteria, and methods of administration that result in discrimination against blind users and perpetuate unequal access.

50. As a result of Defendant's refusal to make its website accessible, Plaintiff and the putative class have suffered concrete, particularized injury directly caused by Defendant's conduct.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of himself and all others similarly situated and seeks certification of a nationwide class pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. The proposed class consists of all legally blind individuals in the United States who attempted to use Defendant's website and, because of its accessibility barriers, were denied equal access to the goods and services offered there during the applicable statutory period.

42. Plaintiff also seeks certification of a New York subclass under Rules 23(a), 23(b)(2), and, in the alternative, 23(b)(3): all legally blind individuals in New York State who attempted to use Defendant's website and were denied equal access to its goods and services during the relevant statutory period.

43. There are hundreds of thousands of visually impaired individuals in New York and millions across the country. Joinder is impracticable, and a class action will promote efficient resolution of the claims at issue.

44. This case arises from Defendant's uniform policy and practice of maintaining an inaccessible website that denies blind users the ability to browse and purchase goods independently. Because these barriers exist for all blind users, the questions of law and fact are common to the class. These include, without limitation:

45. whether Defendant's website is a place of public accommodation under the ADA

46. whether Defendant's website is a place or provider of public accommodation under New York law

47. whether Defendant's operation of the website denies blind users full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations in violation of the ADA

48. and whether Defendant's conduct violates the laws of New York prohibiting discrimination on the basis of disability.

49. Plaintiff's claims are typical of those of the class. Like the class, Plaintiff is legally blind and alleges that Defendant's failure to update or remove barriers on its website prevents blind individuals from using it independently, in violation of federal, state, and city law.

50. Plaintiff will fairly and adequately represent the interests of the class. He is represented by counsel experienced in disability rights and class litigation, and he has no interests in conflict with the class.

51. Certification under Rule 23(b)(2) is appropriate because Defendant has acted and continues to act on grounds generally applicable to the class, making declaratory and injunctive relief suitable for all class members.

52. In the alternative, certification under Rule 23(b)(3) is appropriate because common questions of law and fact predominate over any individualized issues, and a class action is superior to other methods of adjudication.

53. Litigating this matter as a class action will promote judicial economy and avoid the burden of numerous individual suits brought by blind consumers across the United States.

54. References to Plaintiff include both the named Plaintiff and each member of the proposed class unless otherwise stated.

## FIRST CAUSE OF ACTION

*(Violation of 42 U.S.C. §§ 12181 et seq. – Title III of the Americans with Disabilities Act)*

48. Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation set forth above as though fully restated herein.

49. Title III of the Americans with Disabilities Act provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns or operates such a place. 42 U.S.C. § 12182(a). The statute further prohibits the use of standards, criteria, or methods of administration that have the effect of discriminating against individuals with disabilities. 42 U.S.C. § 12181(b)(2)(D)(i).

50. Defendant's website is a sales establishment and therefore a place of public accommodation within the meaning of 42 U.S.C. § 12181(7).

51. Defendant is subject to Title III because it owns, operates, and controls the website through which it offers goods and services to the public.

52. Under 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful to deny individuals with disabilities the opportunity to participate in or benefit from goods and services that Defendant makes available to others.

53. Under 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful to offer individuals with disabilities an opportunity to participate in or benefit from goods or services that is not equal to that enjoyed by other customers.

54. Under 42 U.S.C. § 12182(b)(2)(A)(ii), discrimination includes failing to make reasonable modifications to policies, practices, or procedures when such modifications are necessary to provide access to goods, services, or privileges unless Defendant can demonstrate that the modifications would fundamentally alter the nature of its offerings.

55. Under 42 U.S.C. § 12182(b)(2)(A)(iii), discrimination also includes failing to take steps necessary to ensure that no individual with a disability is excluded, denied services, or otherwise treated differently because of the absence of auxiliary aids or services, unless such steps would fundamentally alter the nature of the goods or services or impose an undue burden.

56. Well-established guidelines exist for designing accessible websites, including those set out in WCAG 2.2. Businesses throughout the United States routinely follow these guidelines by adding appropriate alt-text, ensuring keyboard operability, labeling form fields, structuring headings correctly, and avoiding design elements that trap or obscure focus. Implementing these basic accessibility components would not fundamentally alter the nature of Defendant's business or impose an undue burden.

57. Defendant's conduct constitutes ongoing violations of Title III of the ADA. Blind customers have been denied full and equal access to the website, denied services available to sighted users, and subjected to inferior service conditions because the website cannot be independently navigated with a screen reader.

58. Defendant has failed to take prompt steps to correct the discriminatory conditions on its website, and these violations continue.

59. Unless enjoined, Defendant will continue to discriminate against Plaintiff and the proposed class in the full and equal enjoyment of the goods and services offered through its website.

60. Plaintiff seeks injunctive relief requiring Defendant to bring its website into compliance with the ADA. Plaintiff also seeks recovery of reasonable attorneys' fees and costs as permitted by law.

61. Pursuant to 42 U.S.C. § 12188, Plaintiff requests judgment as set forth in the Prayer for Relief.

## SECOND CAUSE OF ACTION

*(Violation of New York State Human Rights Law, N.Y. Exec. Law Article 15 (Executive Law § 292 et seq.))*

62. Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation set forth above as though fully restated herein.

63. N.Y. Exec. Law § 296(2)(a) makes it an unlawful discriminatory practice for the owner, lessee, proprietor, manager, agent, or employee of any place of public accommodation to refuse, withhold from, or deny any person, because of disability, the accommodations, advantages, facilities, or privileges of that establishment.

64. Defendant's website is a sales establishment and a place of public accommodation as defined by N.Y. Exec. Law § 292(9).

65. Defendant is a "person" within the meaning of N.Y. Exec. Law § 292(1) and is subject to the Human Rights Law because it owns and operates the website through which it offers goods and services to consumers in New York State.

66. Defendant violates N.Y. Exec. Law § 296(2)(a) by maintaining a website that is not accessible to blind individuals, thereby denying them full and equal access to the goods, services, and facilities it provides to the sighted public.

67. Under N.Y. Exec. Law § 296, unlawful discriminatory practice includes refusing to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford facilities, privileges, or advantages to individuals with disabilities unless Defendant can show that such modifications would fundamentally alter the nature of its operations.

68. N.Y. Exec. Law § 296(2)(c)(ii) also provides that unlawful discrimination includes the failure to take necessary steps to ensure that no individual with a disability is excluded or denied services due to the absence of auxiliary aids and services, unless doing so would fundamentally alter the nature of the accommodation or impose an undue burden.

69. Widely available accessibility guidelines, including WCAG 2.2, provide clear methods for making websites accessible to blind users. Implementing these basic standards—such as providing alt text, enabling keyboard navigation, and labeling forms—would not fundamentally alter Defendant's business nor impose an undue burden.

70. Defendant's conduct constitutes willful and intentional discrimination under the New York State Human Rights Law. Defendant has:

71. maintained an inaccessible website despite knowing its impact on blind consumers

72. maintained a structure that is not operable or intuitive for screen-reader users

73. and failed to correct these barriers despite ongoing harm to blind individuals.

74. These violations remain unremedied.

75. As a result, Defendant continues to discriminate against Plaintiff and the class by denying them equal enjoyment of the goods, services, privileges, advantages, and accommodations available on the website, in violation of N.Y. Exec. Law § 296(2). Unless enjoined, the harm will persist.

76. Plaintiff seeks injunctive relief to remedy the discrimination. Plaintiff is also entitled to compensatory damages, civil penalties, and fines pursuant to N.Y. Exec. Law § 297(4)(c), in addition to reasonable attorneys' fees and costs.

77. Pursuant to N.Y. Exec. Law § 297, Plaintiff requests judgment as set forth in the Prayer for Relief.

## THIRD CAUSE OF ACTION

*(Violation of New York State Civil Rights Law,*
*NY CLS Civ R, Article 4 (CLS Civ R § 40 et seq.))*

78. Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation set forth above as though fully restated herein.

79. Plaintiff will serve notice of this action upon the New York State Attorney General as required by N.Y. Civil Rights Law § 41.

80. N.Y. Civil Rights Law § 40 provides that all persons within the jurisdiction of the State are entitled to full and equal accommodations, advantages, facilities, and privileges of any place of public accommodation. It further prohibits owners, lessees, proprietors, managers, agents, and employees

of such establishments from directly or indirectly refusing, withholding, or denying such accommodations based on disability.

81. N.Y. Civil Rights Law § 40-c(2) provides that no person shall be subjected to discrimination in their civil rights, or to any form of harassment in the exercise of those rights, because of disability, whether by an individual, corporation, institution, or governmental entity.

82. Defendant's website is a place of public accommodation within the meaning of N.Y. Civil Rights Law § 40-c(2).

83. Defendant is a "person" under N.Y. Civil Rights Law and is therefore subject to its provisions because it owns and operates the website through which it sells goods and interacts with consumers.

84. Defendant has violated N.Y. Civil Rights Law § 40-c(2) by maintaining a website that is inaccessible to blind users and by refusing to remove or remediate known accessibility barriers. These failures deny blind customers equal access to the goods, services, and information available to sighted users.

85. Well-established accessibility guidelines exist for making websites usable by blind individuals, such as providing alt text for images, labeling form fields, and ensuring all functions are operable by keyboard. Implementing these basic requirements would not fundamentally alter Defendant's business or impose an undue burden.

86. N.Y. Civil Rights Law § 41 states that any corporation that violates §§ 40, 40-a, 40-b, or 40-c is liable for statutory penalties of $100 to $500 per violation, recoverable by the aggrieved party.

87. Further, N.Y. Civil Rights Law § 40-d provides that any person or entity violating § 40 or aiding in such violation shall be liable for the same statutory penalties for each instance of discrimination.

88. Defendant has taken no meaningful steps to correct the accessibility barriers on its website. These violations are ongoing.

89. As a result, Defendant continues to discriminate against Plaintiff and members of the proposed class by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of its website because of disability, in violation of N.Y. Civil Rights Law §§ 40 et seq.

90. Plaintiff is entitled to compensatory damages of not less than $100 and up to $500 per violation, as well as civil penalties for each instance of discrimination.

**<u>FOURTH CAUSE OF ACTION</u>**

*(Violation of New York City Human Rights Law,*
*N.Y.C. Administrative Code § 8-102, et seq.)*

91. Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation set forth above as though fully restated herein.

92. N.Y.C. Administrative Code § 8-107(4)(a) makes it an unlawful discriminatory practice for any owner, lessee, manager, agent, or employee of a place or provider of public accommodation to refuse, withhold from, or deny any person, because of disability, the accommodations, advantages, facilities, or privileges of that establishment.

93. Defendant's website is a sales establishment and therefore a place of public accommodation within the meaning of N.Y.C. Administrative Code § 8-102(9).

94. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1) and is subject to the Human Rights Law because it owns and operates the website through which it offers goods and services to consumers in the City of New York.

95. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) by refusing to update, correct, or remove the accessibility barriers that prevent blind individuals from accessing its website. These barriers deny blind patrons full and equal access to the goods, services, and privileges Defendant makes available to sighted customers.

96. Under N.Y.C. Administrative Code § 8-107(15)(a), entities prohibited from discriminating on the basis of disability must provide reasonable accommodations that enable individuals with disabilities to enjoy the rights at issue, so long as the disability is known or should have been known. Defendant has failed to meet this obligation.

97. Defendant's conduct constitutes willful, intentional discrimination against the class. Defendant has:

98. maintained a website that is inaccessible to blind users despite knowing the discriminatory consequences

99. operated a website that, in structure and function, is not intuitive or usable with a screen reader

100. and failed to take corrective measures despite the substantial harm caused to blind consumers.

101. These violations remain ongoing.

102. As a result, Defendant continues to discriminate against Plaintiff and the proposed class in the full and equal enjoyment of its website's goods, services, facilities, privileges, advantages, and

accommodations, in violation of N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a). Unless enjoined, Plaintiff and class members will continue to face irreparable harm.

103. Defendant's actions violate the New York City Human Rights Law, entitling Plaintiff to injunctive relief, compensatory damages, and civil penalties under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a), as well as reasonable attorneys' fees and costs.

104. Plaintiff requests judgment as set forth in the Prayer for Relief.

## FIFTH CAUSE OF ACTION

*(Declaratory Relief)*

105. Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation set forth above as though fully restated herein.

106. An actual and present controversy exists between the parties. Plaintiff contends, and is informed and believes that Defendant disputes, that Defendant's website contains accessibility barriers that deny blind users full and equal access to its goods, services, and facilities. Plaintiff further contends that the website fails to comply with the Americans with Disabilities Act, Title III, 42 U.S.C. §§ 12182 et seq., the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq., and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-107 et seq., all of which prohibit discrimination against individuals with disabilities.

107. A judicial declaration is necessary and appropriate so that both parties may understand their respective rights and obligations and proceed accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, Website, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Website is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, Website, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e) An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

f) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under New York State Human Rights Law and City Law;

g) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

h) For pre- and post-judgment interest to the extent permitted by law; and

i) For such other and further relief which this court deems just and proper.

Dated: Manhasset, NY
December 10, 2025

GABRIEL A. LEVY, P.C.
*Attorney for Plaintiff*

***/s/ Gabriel A. Levy, Esq.***

By: GABRIEL A. LEVY, ESQ (5488655)
1129 Northern Blvd, Suite 404
Manhasset, NY 11030
Tel: +1 347-941-4715
Email: Glevy@glpcfirm.com